# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **MICHAEL CATANESE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:19-CV-01517-CLM** |
| | ) | |
| **CITY OF TRUSSVILLE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Michael Catanese ("Catanese") is the owner and operator of Courtyard Oyster Bar & Grill in Trussville, Alabama ("Courtyard"). At a hearing before the Trussville City Council, the City of Trussville ("Trussville") revoked the liquor license it had given Courtyard. Catanese now sues Trussville, alleging the revocation violated his procedural due process, substantive due process, and equal protection rights under the Fourteenth Amendment.

Trussville seeks to dismiss all claims. Doc. 33. Accepting as true all facts alleged in Catanese's Amended Complaint (doc. 28) and attached exhibits (docs. 28-1, 28-2, 28-3, 28-4, 28-5, 28-6), *see Griffin Indus., Inv. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007), the court agrees that Catanese fails to state a claim that entitles him to relief. So the court **grants** Trussville's motion to dismiss.

## STATEMENT OF THE FACTS

Catanese opened Courtyard in 2016, and Trussville gave him a liquor license soon after. In early 2019, Trussville passed an ordinance setting new standards for commercial entities with liquor licenses. Among other things, the ordinance required license holders "to maintain order upon the premises and to exclude from the premises any person who is drunk and disorderly or who commits any breach of the peace." The ordinance also provided that "a liquor license is a privilege" and that "any licensee found to be in violation of [the ordinance] may be notified and directed to appear before the City Council for a hearing to show cause why the license should not be revoked." The next month, Trussville sent Courtyard a notice to appear before the City Council to address alleged violations of the ordinance.

Before the hearing, Catanese met with Trussville Mayor Buddy Choat to discuss the letter and ask whether he should bring an attorney to the hearing. Mayor Choat advised Catanese that he did not need an attorney and that any penalty the council imposed would be a "slap on the wrist." So Catanese attended the hearing without an attorney. Mayor Choat was there, as were the five council members, the city attorney, and the chief of police.

The meeting began with a discussion about two incidents in which Courtyard employees sold alcohol to undercover agents who were minors. Both sales occurred within the past six months and both occurred after 5:00pm, the time when Courtyard

stopped serving families or anyone under age 21. Catanese said that neither person who served the undercover agents still served alcohol at Courtyard and that he had since brought a card scanner from another location to help alleviate the problem.

The council president noted that Trussville police had been called to Courtyard 23 times since 2016. Most recently, police were called when a Courtyard patron suffered a heroin overdose. When asked, the police chief said that Buffalo Wild Wings had the next highest number of calls, "and they have less than half of the number of calls at Courtyard."

When asked, Catanese said that Courtyard used private security at the front door on Thursday, Friday, and Saturday nights. But unlike Buffalo Wild Wings, Courtyard did not use off duty police officers or a private security company. Catanese said that he "hire[d] people they find to work the door," and later clarified that "some are retired police[;] some are just people we hire."

The mayor noted that, when the city gave Courtyard its liquor license in 2016, the council asked Catanese if Courtyard participated in the Responsible Vendor Program, and Catanese said no. The mayor asked Catanese if he thought doing so now (2019) might be helpful. Catanese answered that "he could get the Budweiser man to do training" and that "he was a certified trainer for another employer years ago." Doc. 28-5 at 6. The council president then asked Catanese if Courtyard would "change their policy after these instances," and Catanese said Courtyard "will

probably continue to do what they have done. They have their book." *Id.*

After the council had a motion and second to revoke Courtyard's alcohol license, Catanese said that Courtyard was "putting measures in place" and that he was "looking into equipment and possibly getting police back as security." Doc. 28-5 at 7. One councilman said that "he hears this, but no other restaurant that sells alcohol has to do this. These measures are not required to keep order at other restaurants." *Id.* The council then unanimously voted to revoke.

About a month later, the City Council called a Circle K gas station to answer questions about alleged violations of selling alcohol to minors. Circle K's store manager explained that Circle K trained its employees through the Responsible Vendor Program. She said that Circle K had a "one and done" policy on illegal sales and had fired all three offending employees. Circle K's area manager added that their new registers had computers that "kick out sales to underage persons" and "will actually have a video clip of the transaction." Doc. 28-6 at 4. The council "was satisfied with the response received and satisfied that they [Circle K] are trying to control this." So the council did not revoke Circle K's alcohol license.

## STANDARD OF REVIEW

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Rule 8 does not require "detailed factual allegations," but does demand more than "an unadorned, 'the-

defendant-unlawfully-harmed-me' accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Id.*

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. A complaint states a facially plausible claim for relief when the plaintiff pleads facts that permit a reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

## ANALYSIS

### A. Procedural Due Process (Count 1)

Catanese alleges that Trussville's decision to revoke Courtyard's liquor license violated his procedural due process rights. Doc. 28 ¶¶ 22-31. A procedural due process claim has three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir.2003) (citing *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir.1994)). So Catanese must first show that he has a protected property or liberty interest in Courtyard's liquor

license. Because Catanese has no such interest, Count I must be dismissed.

    *i.*     *Property Interest*

The Fourteenth Amendment—which protects people from deprivations of "life, liberty or property without due process of law"—does not create property interests. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Property interests are instead "defined by existing rules or understandings that stem from an independent source such as state law." *Id.* So to determine whether Catanese had a property interest in Courtyard's liquor license, the court must look to the state and local laws that permitted Courtyard's license to determine whether those laws gave Catanese "a legitimate claim of entitlement to it." *Id.*

The Supreme Court of Alabama has offered the best synopsis of Alabama's liquor license laws: state law "expressly provides that the governing authority of a municipality must give its consent and approval before a retail liquor license can be issued by the ABC Board if the premises sought to be licensed are located within a municipality." *Ott v. Everett*, 420 So.2d 258, 259-60 (Ala. 1982). The Court explained that a decisionmaker voting to approve or reject an application for a liquor license "may not be liable for damages absent a corrupt or malicious motive in the exercise of that function." *Id.* at 260. In other words, the city decides whether a business gets a liquor license, and it has pretty broad discretion when doing so.

The Trussville Alcoholic Beverage Ordinance classifies a liquor license as a "privilege," not an entitlement. Ord. No. 2019-009-ADM. The ordinance does not mention situations in which a liquor license *must* be issued, nor does it mention a situation in which the city cannot revoke the license. In other words, neither the state law nor the local ordinance that governed Courtyard's liquor license say that Catanese was entitled to keep the license once he had it.

Consistent with this plain reading, state courts have held that the issuance of a liquor license is not a property interest to which due process protections attach. *Potts v. Bennett*, 487 So.2d 919, 923 (Ala.Civ.App. 1985); *Ott*, 420 So.2d at 260. Knowing this, Catanese argues that this federal court ought to find a distinction between the *issuance* of a liquor license and its *revocation*. Doc. 36, p. 5. Catanese points to U.S. Supreme Court cases holding that the "continued possession" of already-acquired licenses "may become essential in the pursuit of a livelihood," thus making them protected property interests. *Bell v. Burson*, 402 U.S. 535, 539 (1971).

While Catanese is right that simply labeling something a "privilege" does not necessarily make it a privilege, rather than an entitlement, his argument still fails. This is a state law issue. Federal courts cannot create state law, *Pittman v. Coleman*, 267 F.3d 1269, 1285 (11th Cir. 2001), and to the extent we may interpret state law, we must follow what state courts have already said on the matter. *Id.* ("…principles of federalism counsel in favor of allowing state courts, instead of federal courts, to

interpret and define state law before the federal courts subject the state law to federal constitutional scrutiny.").

As mentioned above, state courts have held that liquor licenses do not carry property interests. Those state courts have not distinguished between the issuance and revocation of these licenses. Federalism dictates that this court refrain from creating a distinction in state-law property interests that state courts have not.

ii.   *Liberty Interest*

Like property interests, the Constitution does not create liberty interests. Alabama state courts are also equally dismissive of claims that liquor licenses carry liberty interests. *Ott*, 420 So.2d at 261. Indeed, nothing in the cases cited by either Catanese or Trussville offers any indication that state courts treat the argument for liberty interests in liquor licenses any differently than for property interests. That Courtyard's use of the liquor license accounted for much of its revenue does not alter the analysis. So this court does not find that Catanese had a liberty interest in Courtyard's liquor license. Lacking either a property or liberty interest, Catanese's procedural due process claim is due to be dismissed.

## B. Substantive Due Process (Count II)

Substantive due process isn't concerned about procedure; it protects certain fundamental rights from *any* state-based deprivation that lacks a compelling state interest, regardless of the procedure used. *Daniels v. Williams*, 474 U.S. 327, 331

(1986). These "fundamental rights" are created by the Constitution itself and are "deeply rooted in this Nation's history and tradition." *Moore v. City of East Cleveland, Ohio*, 431 U.S. 494, 502 (1977).

But as stated in the previous section, Courtyard's right to possess a liquor license is created and governed by Alabama state and local law, not the Constitution. "Rights 'created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection . . . because substantive due process rights are created only by the Constitution.'" *Artistic Ent., Inc. v. City of Warner Robins*, 134 Fed. App'x 306, 308 (11th Cir. 2005) (quoting *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir.1994)).

Catanese alleges that Trussville deprived him of a liquor license created by the State. Doc. 28, ¶32-47. Because the federal Constitution did not create the license, or Catanese's right to have it, Catanese fails to plead facts that could establish a substantive due process violation.[1] *Warner Robins*, 134 Fed. App'x at 309 ("In this case, Artistic has shown no more than deprivation of a license, a property interest created by state law, and therefore has failed to establish a substantive due process violation.").

---

[1] In his complaint, Catanese couches his substantive due process claim as a deprivation of property interest (doc. 28, ¶¶ 34-35), and the parties spend their briefing space arguing whether Catanese had a protected interest (docs. 33 at 5-13; 36 at 2-7). So the court limits its review of Count II to the theory presented in the complaint and briefing and finds that Catanese has waived any other theory of substantive due process.

## C. Equal Protection (Count III)

Finally, Catanese alleges that Trussville violated his rights under the Equal Protection clause when it revoked his liquor license. Doc. 28, ¶¶44-54. Unlike most equal protection plaintiffs, Catanese is not a member of a protected group, so this is a "class of one" claim. This means that Catanese must plead enough facts to prove two things: (1) Trussville treated Catanese differently than similarly situated individuals, and (2) Trussville had no rational basis for treating Catanese differently. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1201-02 (11th Cir. 2007) (discussing *Vill. Of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam)). As discussed below, Catanese has done neither.

1. <u>Similarly-situated</u>: Catanese alleges two similarly situated comparators in his Amended Complaint: Circle K and Buffalo Wild Wings. Doc. 28, ¶52. The Eleventh Circuit has said that, in a class of one claim, these comparators "must be prima facie identical in all relevant respects." *Griffin Indus.*, 496 F.3d at 1204. A class of one claim may be dismissed under Rules 8 and 12 if the plaintiff either (a) "omit[s] key factual details in alleging that [he] is similarly situated to another" or (b) pleads enough facts in the complaint and exhibits to show why the comparators are not similarly situated. *Id.* at 1205. Catanese's amended complaint suffers from the latter problem; his exhibits show why his comparators are not similarly situated.

Circle K is not similarly situated to Courtyard for at least three reasons. First, Circle K is a gas station, while Courtyard is a restaurant with a bar. When someone buys alcohol at Circle K, he pays, then leaves. But patrons could drink their alcohol inside the Courtyard until 2:00am, which led to problems like domestic disputes and a heroin overdose—problems that a gas station typically avoids. Doc. 28-5 at 4-7. Second, Catanese's exhibits show that police had been called to Courtyard 23 times from 2016 to 2019 (doc. 28-5 at 4), but fail to allege that police had been called to Circle K at any point during the same time frame.[2] Third, Circle K trained its employees through the Responsible Vendor Program (doc. 28-6 at 4), the same program that Catanese said he would not use when the city asked him about using it in 2016 and 2019 (doc. 28-5 at 5-6).

Buffalo Wild Wings is a better comparator, in that Buffalo Wild Wings is a restaurant and not a gas station. But Catanese's exhibits show that the restaurants are not "prima facie identical in all relevant respects." *Griffin Indus.*, 496 F.3d at 1204. In fact, the only similarities that Catanese pleads is that both Courtyard and Buffalo Wild Wings serve alcohol and both employ private security. Doc. 28, ¶¶ 14, 50. But the security is not identical. Buffalo Wild Wings uses off-duty police officers (doc. 28-5 at 6), while Courtyard was using "retired police" and "just people we hire" (*id.*).

---

[2] The council called Circle K because of alcohol sales to underage buyers (doc. 28-6 at 4).

More telling are the differences that Catanese doesn't allege in the body of his Amended Complaint but are revealed in his attached exhibits. Police were called to Courtyard 23 times from 2016 to 2019; police were called to Buffalo Wild Wings "less than half" that amount. Doc. 28-5 at 4. Courtyard stops serving families and persons under 21 at 5:00pm; no such restriction is alleged for Buffalo Wild Wings. Doc. 28-5 at 5. Courtyard recently had a patron overdose on heroin; no such incident is alleged to have occurred at Buffalo Wild Wings. Doc. 28-5 at 6. And finally, Courtyard had been twice cited for selling alcohol to minors (thus the council summons), but there is no such allegation against Buffalo Wild Wings. *Id.*

In short, Catanese fails to allege facts that would prove that Trussville refused to revoke the liquor license of a business that was "prima facie identical [to Courtyard] in all relevant respects." *Griffin Indus.*, 496 F.3d at 1204. So Catanese cannot establish the first element of a class of one claim.

2. <u>Rational basis</u>: Nor could the facts, as pleaded, establish that Trussville lacked a rational basis for treating Courtyard differently than Circle K or Buffalo Wild Wings. Having just heard about two sales to underage buyers and 23 police calls, including a heroin overdose the week before, the council members expressed their concern that Courtyard had no "emergency plan in place" and that Catanese had not convinced them at the hearing that "this is a wake up call and things will be done differently." Doc. 28-5 at 6-7. One council member said he "did not think there

was sufficient training" and "did not feel it would be any different this weekend." *Id.* at 7. None of these things were said about Circle K, Buffalo Wild Wings, or any other business that served alcohol.

Whether this federal court agrees with the city's decision is irrelevant. State law gives the city the discretion to grant and revoke alcohol licenses, and based on the facts alleged in the Amended Complaint and its exhibits, the city's decision to revoke Courtyard's license had a rational basis—*i.e.*, prevention of further issues such as domestic disputes, drug overdoses, and underage sales. So Catanese cannot establish the second element of a class of one claim.

* * *

The Eleventh Circuit has said that courts must apply "the similarly situated requirement with rigor" when reviewing Rule 12 motions. *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1275 (11th Cir. 2008) (quoting *Griffin Indus.*, 496 F.3d at 1207). The court's review must include "all the factors that would be relevant to an objectively reasonable governmental decisionmaker." *Griffin Indus.*, 496 F.3d at 1207. Having conducted that 'rigorous' review here, the court finds that Catanese has not pled that Courtyard was treated differently than a similarly situated entity. So his class of one Equal Protection claim must fail.

## CONCLUSION

For the reasons stated above, Trussville's motion to dismiss is due to be

**GRANTED**. This court will enter a separate order carrying out this finding.

**DONE** this 4th day of January, 2021.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE